**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEE COFFEY,<br><br>Plaintiff,<br><br>v.<br><br>SUSSEX COUNTY COMMUNITY COLLEGE, *et al.*,<br><br>Defendants. | Civil Action No. 25-1264 (JXN)(JBC)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court are motions to dismiss *pro se* Plaintiff Lee Coffey's ("Plaintiff") Second Amended Complaint (ECF No. 137) filed by: (1) Sussex County Community College ("College") and Jon Connolly ("Connolly") (together, "College Defendants") (ECF No. 142)[1]; and (2) the Town of Newton ("Newton"), Steven Siek ("Siek"), and Eric Soroka ("Soroka") (together, "Newton Defendants") (ECF No. 145).[2] The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[3] 78 and Local Civil Rule 78.1. For the reasons set forth below, both motions to dismiss (ECF Nos. 142, 145) are **GRANTED**.

[1] To which Plaintiff opposed (ECF No. 152), and the College Defendants replied (ECF No. 155).

[2] To which Plaintiff opposed (ECF No. 153), and the Newton Defendants replied (ECF No. 154).

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

# I. BACKGROUND

## A. The College Allegedly Retaliates Against Plaintiff, a Student, for Complaining About his Landlord

Plaintiff was an international student at the College from around 2020 to February 2, 2023. (*See* Second Am. Compl. ("SAC") ¶¶ 34, 41, 75, ECF No. 137.) Kevin Shaw ("Shaw") was his landlord. (*Id.* ¶ 35.) Plaintiff claims he "began investigating complaints concerning Shaw" in 2020, and "pressed" College officials "for institutional intervention." (*Id.* ¶ 41.) But, according to Plaintiff, College officials "treated him," not Shaw, as the "problem" and "allowed retaliation to follow." (*Id.* ¶¶ 46–47.)

Plaintiff asserts that Connolly, the College's president, knew or "or had reason to" know about Plaintiff's complaints. (*Id.* ¶ 67.) Plaintiff claims Connolly saw the complaints as a "threat" to the College's relationship with Shaw. (*Id.* ¶ 68.) So, in Plaintiff's telling, Connolly used "institutional means to retaliate against [Plaintiff], including directing or causing heightened security scrutiny, intrusive questioning, public-facing treatment that associated Plaintiff with disciplinary or criminal suspicion, and use of security, counsel, and police processes in response to Plaintiff's complaints." (*Id.* ¶ 70.) Further, Plaintiff alleges College "security personnel were deliberately stationed outside Plaintiff's classes, gym sessions, and study areas and that these encounters were designed to shame him and mark him publicly as trouble." (*Id.* ¶ 71.) Plaintiff asserts that Connolly "regarded Plaintiff as a significant problem and expressed hostility toward Plaintiff's continued presence" at the College. (*Id.* ¶ 73.)

## B. Plaintiff Punches His Landlord in the Face, is Arrested, and Then Expelled

On January 23, 2023, Plaintiff filed a lawsuit against Shaw. (*Id.* ¶ 94.) While attempting to serve Shaw with process, Plaintiff punched Shaw in the face. (*See id.* ¶ 97); *Coffey v. Sussex Cnty. Cmty. Coll.*, No. 25-1264, 2026 WL 265547, at *1 (D.N.J. Feb. 2, 2026). Newton Police Officers

Siek and Soroka apparently investigated the matter. (SAC ¶ 101.) The next day, Plaintiff went to Newton Police headquarters to speak with Siek. (*Id.* ¶ 104.) While there, Plaintiff was arrested and charged with third-degree aggravated assault. (*Id.* ¶ 105.) Plaintiff claims the charging process was "irregular." (*Id.* ¶ 107.)

The College expelled Plaintiff on February 2, 2023. (*Id.* ¶ 75.) The expulsion letter stated that:

> The Fall semester has ended. You did not pay tuition, and you did not complete your classes. You have neither paid tuition for nor attended class for the Spring semester. In the view of the College, you are no longer enrolled.

(*See* Pl.'s Ex. V, ECF No. 136-1.) The letter continued,

> However, because you may have a different view of your status, we will proceed, in the alternative, as if you are enrolled.
>
> The College reserves the right to suspend or dismiss students for conduct detrimental to the best interest of the College Community. That conduct can include off-campus activities, including, as the Code of Conduct states, "physical violence or the threat of physical violence" and "assault and/or battery." The College reserves the right to take disciplinary action in any circumstance where it reasonably believes it necessary for the best interest of the College Community.
>
> Therefore, even without reference to your tuition payments or your attendance, the College has determined that you are no longer suitable to be a student at Sussex County Community College, and **you are hereby immediately dismissed from any remaining student status which you might have**. The reasons for this decision include, but are not limited in part to your assault of Dr. Shaw on January 24, 2023 and your resulting arrest, and in part to your general duplicity and lack of good character.
>
> The College will promptly notify the appropriate immigration authorities that you have been expelled. You are not welcome to reapply, and you will not be readmitted. You may no longer enter onto the College campus.
>
> I am copying this letter to Newton Police Chief Steven VanNieuwland, so that he may be aware of these circumstances.

(*Id.*) Later that month, Plaintiff hand-delivered a written complaint addressed to Connolly to the College's administration building. (SAC ¶ 81.) A College employee called the police, and soon

after, Plaintiff was charged with defiant trespass. (*Id.* ¶ 87.) A month later, Connolly allegedly filed a citizen complaint against Plaintiff in municipal court, leading Plaintiff to be charged with harassment. (*Id.* ¶ 90.) Both charges were dropped on September 28, 2023. (*Id.* ¶¶ 89, 92.)

**C. Plaintiff Sues the College; the Parties Settle**

On February 14, 2023, Plaintiff sued the College in New Jersey Superior Court, Special Civil Part ("First State Lawsuit") for "[e]xtreme [n]egligence with regards to students campus safety, international housing[,] and basic educational needs," "[t]hreats, [h]arassment, [i]ntimidation, and [s]talking," "[f]raudulent [m]isrepresentation," and "USCIS fraud." (*See* Coll. Defs.' Ex. B at *3,[4] ECF No. 142-2.[5]) The Special Civil Part judge dismissed the First State Lawsuit without prejudice for Plaintiff's failure to provide discovery. (*See* Coll. Defs.' Ex. C, ECF No. 142-3.) After Plaintiff failed to cure his discovery deficiencies, the judge dismissed the First State Lawsuit with prejudice. (*Id.*)

Four months later, on June 2, 2023, Plaintiff filed a second complaint in the Special Civil Part against the College ("Second State Lawsuit"). (*See* Coll. Defs.' Ex. D, ECF No. 142-4.) This time, Plaintiff sued the College for, among other things, "[d]eliberate or negligent, substantially false statements made to multiple third-parties" about Plaintiff, the "[t]ermination of [Plaintiff's] student status," and "[f]rivolous [m]unicipal [c]ourt action filed from the defendant and/or affiliations of the defendant which can be constituted as retaliation for court filings." (*Id.* at *12.)

---

[4] Pincites preceded by an asterisk (*) reflect ECF pagination.

[5] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). Correspondingly, on a motion to dismiss, "a court may take judicial notice of the record from a previous court proceeding between the parties." *Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016).

On July 25, 2023, Plaintiff and the College settled the Second State Lawsuit for $18,893. (*See* Defs.' Ex. E, ECF No. 124-5.[6])

### D. Plaintiff is Convicted of Aggravated Assault

In August 2023, Plaintiff was indicted for third-degree aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(7). *See State v. Coffey*, No. 23-08-202-I (Aug. 24, 2023). He fled the state mid-trial. *See Coffey*, 2026 WL 265547, at *1. On September 27, 2024, a jury found Plaintiff guilty of third-degree aggravated assault. *See State v. Coffey*, No. 23-08-202-I (Sept. 27, 2024).

### E. Procedural History

In February 2025, Plaintiff sued Shaw, the College, Connolly, an economics professor,[7] the Sussex County Board of Commissioners and its legal counsel,[8] Newton, the chief of police,[9] several officers,[10] the Sussex County Prosecutor,[11] and his public defender.[12] (*See* Compl., ECF No. 1.) Plaintiff later amended his complaint. (Am. Compl., ECF No. 63.) The defendants filed motions to dismiss the Amended Complaint, which the Court granted on February 2, 2026. The Court concluded the "124-page 507-paragraph Amended Complaint" was "unnecessarily complicated and verbose," a "textbook group pleading," and implausible. *Coffey*, 2026 WL 265547, at *4–5.

Plaintiff then filed a Second Amended Complaint against the College Defendants and Newton Defendants. (*See* SAC.) The Second Amended Complaint asserts a First Amendment

[6] The Court takes notice of the College's resolution approving the settlement as a matter of public record.

[7] Salvatore Paolucci.

[8] Douglas Steinhardt.

[9] Steven VanNieuwland.

[10] Siek, Soroka, and Judy Torres.

[11] Jerome P. Neidhardt.

[12] Thomas Milano.

retaliation claim against Connolly, a *Monell*[13] claim against the College, a selective enforcement/denial of equal protection claim against Siek and Soroka, and a *Monell* claim against Newton.

The College Defendants and Newton Defendants separately moved to dismiss. (*See* Coll. Defs.' Moving Br., ECF No. 142; Newton Defs.' Moving Br., ECF No. 145.) The College Defendants argue (1) the entire controversy doctrine bars Plaintiff's claims; (2) Plaintiff fails to state a *Monell* claim against the College; and (3) Connolly is entitled to qualified immunity. (*See generally* Coll. Defs.' Moving Br., ECF No. 142.) Plaintiff opposed (Pl.'s Opp'n to Coll. Defs. ECF No. 152) and the College Defendants replied (Coll Defs.' Reply, ECF No. 155).

The Newton Defendants argue (1) *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the selective prosecution claims against Siek and Soroka; (2) Siek and Soroka are entitled to qualified immunity; and (3) Plaintiff fails to state a *Monell* claim against Newton. (*See generally* Newton Defs.' Moving Br., ECF No. 145-1.) Plaintiff opposed (Pl.'s Opp'n to Newton Defs., ECF No. 153) and the Newton Defendants replied (Newton Defs.' Reply, ECF No. 154).

## II. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[13] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Courts give "greater leeway to *pro se* litigants" like Plaintiff. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). But that flexibility has limits. *Pro se* plaintiffs "still must allege sufficient facts in their complaints to support a claim." *Id.* at 245.

## III. DISCUSSION

### A. The Entire Controversy Doctrine Bars Plaintiff's Claims Against the College Defendants

The College Defendants argue the entire controversy doctrine precludes Plaintiff's claims, that Plaintiff fails to state a First Amendment Retaliation claim against Connolly or a *Monell* claim against the College, and that Connolly is entitled to qualified immunity. "Because the entire controversy doctrine is fully dispositive of this matter, the Court limits its analysis to whether preclusion of Plaintiff's claims is warranted on this basis alone." *Brunetta v. Egg Harbor Twp. Sch. Dist.*, No. 22-7511, 2023 WL 5274529, at *3 (D.N.J. Aug. 16, 2023).

The "entire controversy doctrine" requires a party to bring "all affirmative claims that it might have against another party, including counterclaims and cross-claims, and to join in that

action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (cleaned up). The doctrine is "New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (quoting *Rycoline Prods.*, 109 F.3d at 886). The entire controversy doctrine bars a claim in a subsequent action if: (1) the claim arises "from related facts or the same transaction" as a previous action; (2) "the first proceeding produced a final judgment"; and (3) the party had "a fair and reasonable opportunity to have fully litigated that claim in the original action." *Crisafulli v. Township of Branchburg*, No. 22-1948, 2023 WL 3845304, at *2 (3d Cir. June 6, 2023) (first quoting *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995); then citing *Rycoline Prods.*, 109 F.3d at 888–89; and then quoting *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606 (2015)). The doctrine is "based on judicial discretion and the facts of each case." *Bank Leumi USA v. Kloss*, 331 F. Supp. 3d 404, 408–09 (D.N.J. 2018). The Court may address the entire controversy doctrine on a motion to dismiss if the bar is "apparent on the face of the complaint." *Rycoline Prods.*, 109 F.3d at 886. "Still, in making this determination, courts are not precluded from taking notice of matters of public record, such as the state-court judgment and the plaintiff's pleading."[14] *Brunetta*, 2023 WL 5274529, at *4 (citations omitted).

[14] In support of their entire controversy doctrine argument, the College Defendants attempt to introduce a copy of the Settlement Agreement, wherein Plaintiff agreed to "release[], with prejudice, the College, and its trustees, agents, servants and employees, from any and all claims which are or could have been asserted in the Second Lawsuit." (Coll. Defs.' Ex. E at *4.) Though the Court can take notice of the fact that the parties settled and dismissed the action with prejudice, the Settlement Agreement was not integral to, explicitly relied on by, or attached to the Second Amended Complaint. Indeed, the parties agreed to keep the Settlement Agreement confidential. (*See id.* at *7–8.) When the Court is presented with extrinsic documents not properly considered on a motion to dismiss, the Court has the discretion to (1) disregard the documents; (2) deny the motion; or (3) convert the motion into one for summary judgment. *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 4 (D.N.J. 2019). The Court disregards the documents, as no discovery has been taken and summary judgment would be premature.

This action satisfies all three conditions of the entire controversy doctrine. ***First***, Plaintiff's claims against the College Defendants in this action arise from the same facts as the First and Second State Lawsuits. The First State Lawsuit asserted that the College failed to handle student complaints about housing and safety and retaliated against Plaintiff for filing those complaints. (*See* Coll. Defs.' Ex. B.) The Second State Lawsuit alleges the College made false statements about Plaintiff, wrongfully terminated Plaintiff's student status, and filed a frivolous lawsuit against Plaintiff. (*See* Coll. Defs.' Ex. D.) Likewise, in this action, Plaintiff claims he made complaints to the College, and the College and Connolly retaliated by expelling him, banning him from campus, and filing criminal complaints and charges against him.

***Second***, Plaintiff's State lawsuits ended in final judgments. A final judgment includes "any dismissal with prejudice." *Argen v. Att'y Gen. N.J.*, No. 21-2571, 2022 WL 3369109, at *5 n.17 (3d Cir. Aug. 16, 2022). Dismissal with prejudice "constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial." *Kloss*, 331 F. Supp. 3d at 410 (quoting *Dowdell v. Univ. of Med. & Dentistry of N.J.*, 94 F.Supp.2d 527, 533 (D.N.J. 2000)). Here, the Special Civil Part judge dismissed the First State Lawsuit with prejudice for Plaintiff's failure to comply with discovery obligations. (*See* Coll. Defs.' Ex. C.) The parties voluntarily dismissed the Second State Lawsuit with prejudice as part of their settlement. (*See* Coll. Defs.' Ex. E.) Both dismissals with prejudice operate as a final judgment on the merits for purposes of the entire controversy doctrine.[15] *See, e.g.*, *Koch v. Pechota*, No. 16-3637, 2017 WL 4316102, at *7 (D.N.J. Sept. 28, 2017) ("A dismissal of a plaintiff's complaint, even for failure to prosecute, is a

---

[15] The Court notes that New Jersey codified the entire controversy doctrine in Court Rule 4:30A, which provides the "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." The Court Rules governing Special Civil Part actions "contain[] no provision exempting R. 4:30A." *Luppino v. Mizrahi*, 326 N.J. Super. 182, 187 (App. Div. 1999).

final judgment on the merits."), *aff'd,* 744 F. App'x 105 (3d Cir. 2018); *Maiden v. N. Brunswick Twp. Sch. Dist.*, No. 19-18768, 2020 WL 3546809, at *4 (D.N.J. June 30, 2020) (holding that stipulation of dismissal with prejudice "represents a final judgment on the merits" for *res judicata* purposes).

***Third***, Plaintiff had a full and fair opportunity in the State Lawsuits to bring the constitutional claims he now asserts. A party has a full and fair opportunity to litigate a claim if they "knew about" the complained-of conduct "at the time of the original proceeding." *Crisafulli*, 2023 WL 3845304, at *2. In this action, Plaintiff asserts the College Defendants violated his First Amendment rights by retaliating against him from 2020 to 2023, expelling and banning him from campus in February 2023, having him charged with trespass in February 2023, and filing a citizen complaint against him in March 2023. All those events occurred *before* Plaintiff filed his Second State Lawsuit in June 2023. Moreover, the First and Second State Lawsuits sought to recover for the exact same conduct now alleged. Therefore, Plaintiff knew about the College Defendants' conduct when he sued the College in state court. And so, Plaintiff had a full and fair opportunity to raise his constitutional claims in his State Lawsuits.

In sum, the Second Amended Complaint arises from the same facts as Plaintiff's State Lawsuits. Those actions ended in final judgments on the merits. Plaintiff could have brought the constitutional claims he now asserts in his State Lawsuits. But he did not. So, he cannot do so now. Accordingly, the entire controversy doctrine bars the claims against the College Defendants.

### B. The Selective Enforcement Claim Against Siek and Soroka is Time-Barred and *Heck*-Barred

Plaintiff asserts a § 1983 claim against Siek and Soroka for selective enforcement and denial of equal protection. (SAC ¶¶ 217–37.) Plaintiff argues neither officer handled Plaintiff's January 23, 2023 arrest "in a neutral or evenhanded manner, but instead selectively enforced the

law against Plaintiff while declining to pursue comparable enforcement against Kevin Shaw." (*Id.* ¶ 218.)

To state a selective enforcement claim under the Equal Protection Clause, the plaintiff must show (1) he or she "was treated differently from other similarly situated individuals," and (2) the "selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).

§ 1983 claims borrow "the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). New Jersey's personal injury statute of limitations is two years. N.J.S.A. 2A:14-2. A statute of limitations starts running when a claim "accrues." *Dique*, 603 F.3d at 185. A claim "accrues" when the plaintiff has "a complete and present cause of action," i.e., when they "can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation omitted). In the § 1983 context, a claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the [§] 1983 action." *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). However, "[t]he discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person." *Dique*, 603 F.3d at 185. The discovery rule delays accrual until the "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Id.* (alteration in original) (quoting *Lopez v. Swyer*, 62 N.J. 267, 272 (1973)).

According to Plaintiff, Siek and Soroka selectively enforced the law when they arrested Plaintiff on January 23, 2023, but not Shaw. Plaintiff had reason to know he was injured when he was arrested. Indeed, as the Second Amended Complaint alleges, *before* Plaintiff's arrest, Newton Police received complaints about and responded to altercations involving Shaw. (SAC ¶¶ 218–21.) Yet "[d]espite that *prior familiarity* and despite later complaints concerning Shaw's conduct toward Plaintiff and other [College] students, Newton officers did not pursue ordinary investigative or enforcement measures against Shaw." (*Id.* ¶ 222 (emphasis added).) So, unlike a case where the plaintiff "had absolutely no reason to know that he was even injured until he later found out about the state's" selective enforcement policies, *Love v. City of New Brunswick*, No. 16-2586, 2018 WL 429247, at *8 (D.N.J. Jan. 16, 2018), Plaintiff knew, from the moment of his arrest, that Siek and Soroka arrested *him*, but not Shaw, for an allegedly arbitrary reason. *Cf. Dique*, 603 F.3d at 188 (finding plaintiff was "was reasonably unaware of his injury" because officer "purported to stop his car for a speeding violation," and claim only accrued when "when his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices.").

Because Plaintiff knew he was the victim of allegedly selective enforcement upon his January 23, 2023 arrest, Plaintiff had until January 23, 2025 to file a § 1983 selective enforcement claim. Plaintiff filed his claim on February 13, 2025. Accordingly, Plaintiff's selective enforcement claim is time-barred.

Even if Plaintiff's selective enforcement claim was timely, it is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* requires that a plaintiff seeking to recover damages under § 1983 for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" must show their

conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487. The question is whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* If the answer is "yes," the Court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* If the answer is "no," the action may proceed. *Id.*

"The Third Circuit has held that claims for selective enforcement will virtually always imply the invalidity of the conviction resulting from that selective enforcement." *Brown v. Elizabeth City Police Dep't*, No. 16-2119, 2016 WL 1597933, at *6 (D.N.J. Apr. 21, 2016). "As such, where a selective enforcement results in a conviction prior to the running of the two-year statute of limitations, the plaintiff's selective enforcement claim is barred by *Heck* until such time as his conviction is overturned." *Id.* Here, Siek and Soroka's allegedly selective enforcement resulted in Plaintiff's conviction of third-degree aggravated assault. Thus, *Heck* bars Plaintiff's selective enforcement claim, even if it were timely, until it is overturned or invalidated.

### C. Plaintiff Does Not Adequately Allege a *Monell* Claim against Newton

A municipality "is not vicariously liable for the unconstitutional conduct of its employees." *Hightower v. City of Philadelphia*, 130 F.4th 352, 355 (3d Cir. 2025). Instead, the plaintiff must show the municipality's "choices were the 'moving force' behind the constitutional violation." *Id.* at 356. To show the municipality's choices were the "moving force" behind a constitutional violation, the plaintiff must show the municipality either "(1) had an unconstitutional policy or custom or (2) was deliberately indifferent to [the plaintiff's] rights." *Id.* A policy is an "official

proclamation, policy or edict by a decisionmaker possessing final authority." *Id.* A custom is a practice "so persistent and widespread as to practically have the force of law." *Id.* Deliberate indifference means "a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 357 (citation omitted).

Plaintiff argues Newton "escalated enforcement against Plaintiff while failing to use ordinary investigative channels in certain complaints involving Connolly or Shaw." (SAC ¶ 240.) Plaintiff points to (1) Newton's "handling of" his arrest; (2) the Newton Police chief's receipt of "the February 2, 2023 [College] expulsion and no-campus-access notice"; (3) "the February 22, 2023 defiant-trespass referral and charge"; and (4) Newton's handling of "the March 2023 citizen complaint, the reported threat to Plaintiff, Plaintiff's Internal Affairs complaint IA 24-08, and the Connolly firearm and terroristic-threat matters." (*Id.* ¶ 241.)

Plaintiff, however, does not satisfy any element of a *Monell* claim. First, he does not identify a cognizable injury. Plaintiff's arrest cannot form the basis for *Monell* liability, as it is time-barred and *Heck*-barred. Plaintiff's February 3, 2023 expulsion is similarly time-barred. Plaintiff does not explain how being arrested for trespass amounts to constitutional injury, as the enforcement of the College's campus ban does not implicate Plaintiff's First Amendment rights. *Virginia v. Hicks*, 539 U.S. 113, 123 (2003) (holding that punishing a trespasser "who wishes to engage in free speech no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration."). Nor does Plaintiff show how Newton's handling of Connolly's March 2023 citizen complaint inflicted constitutional injury. And, although Plaintiff argues Newton failed to act on any of his complaints about Shaw, Connolly, or others, Plaintiff cannot sue "a government entity for its failure to investigate or bring

criminal charges against another individual." *Boseski v. North Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (collecting cases).

Next, Plaintiff does not show Newton was the "moving force" behind any constitutional injury. He does not point to any "official proclamation, policy or edict by a decisionmaker possessing final authority," let alone identify any such decisionmaker. *Hightower*, 130 F.4th at 356. Nor does he allege Newton had a practice "so persistent and widespread as to practically have the force of law." *Id.* Likewise, Plaintiff does not allege that any "municipal actor disregarded a known or obvious consequence of his action." *Id.* at 357 (citation omitted). At most, Plaintiff asserts Newton's "policies, customs, and/or training and supervision failures were the moving force behind the constitutional injuries because they amounted to deliberate indifference to the rights of persons affected by police responses to protected activity and citizen complaints." (SAC ¶ 261.) But this "formulaic recitation of the elements of a cause of action" will not withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff fails to state a *Monell* claim against Newton.

**D. Dismissal is With Prejudice**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

The Court finds that a third amended complaint would fail to state a claim upon which relief could be granted. The entire controversy doctrine bars all Plaintiff's claims against the

College Defendants. And Plaintiff's claims against Siek and Soroka are untimely and *Heck*-barred. Those claims fail as a matter of law and cannot be fixed with more facts.

The Court also finds Plaintiff's *Monell* claim against Newton would fail to state a claim if re-pled. Plaintiff has already amended his complaint twice. Though Plaintiff narrowed the scope of his Second Amended Complaint, each iteration of his pleading alleges the same core facts against Newton—that Newton investigated, arrested, and charged Plaintiff with crimes, but not Shaw or Connolly. (*See* Compl. ¶¶ 111–29; Am. Compl. ¶¶ 115–37; SAC ¶¶ 75–121.) Those allegations were inadequate before and remain so. As discussed above, Plaintiff's assertions are largely time-barred and *Heck*-barred, do not give rise to violations of Plaintiff's constitutional rights, and do not implicate unconstitutional policies or customs. "[I]t would be futile to allow [Plaintiff] to file another amended complaint." *White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 n.3 (3d Cir. Aug. 2, 2023). Accordingly, the Second Amended Complaint is **DISMISSED *with prejudice***.

Relatedly, because the Court dismisses the Second Amended Complaint with prejudice, the motions to stay discovery filed by the College Defendants (ECF No. 148) and the Newton Defendants (ECF No. 151) are **DENIED as moot**.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss field by the College Defendants (ECF No. 142) and the Newton Defendants (ECF No. 145) are **GRANTED**. The motions to stay discovery filed by the College Defendants (ECF No. 148) and the Newton Defendants (ECF No. 151) are **DENIED as moot**. The Second Amended Complaint (ECF No. 137) is **DISMISSED *with prejudice***. An appropriate Order accompanies this Opinion.

**DATED: 11/19/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**